J-S23042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MUSTAFA MCCLOUD | : | |
| | : | |
| Appellant | : | No. 2720 EDA 2024 |

Appeal from the PCRA Order Entered October 7, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0203311-2005

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MUSTAFA MCCLOUD | : | |
| | : | |
| Appellant | : | No. 2721 EDA 2024 |

Appeal from the PCRA Order Entered October 7, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0204541-2005

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MUSTAFA MCCLOUD | : | |
| | : | |
| Appellant | : | No. 2722 EDA 2024 |

Appeal from the PCRA Order Entered October 7, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0203851-2005

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED AUGUST 11, 2025**

Mustafa McCloud ("McCloud") appeals from the order dismissing, following an evidentiary hearing, his serial petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

We take the underlying facts and procedural history in this matter from the PCRA court's opinion and our independent review of the certified record. In October 2004, McCloud was part of a group of males who shot at Charles Wesley ("Wesley"),[2] Sharee Norton ("Norton") and Norton's two children and then shot at police who were in the neighborhood investigating an unrelated matter.  ***See*** PCRA Court Opinion, 1/7/25, at 2-3.  Of pertinence to the instant matter, Norton was the only eyewitness to the shooting who was able to identify McCloud as one of the shooters.  ***See id***.  Norton was a reluctant witness, who initially refused to cooperate but ultimately identified McCloud both at a preservation hearing and at trial.  ***See id***.  In November 2005, a jury convicted McCloud of attempted murder, eight counts of aggravated assault, conspiracy, and related weapons offenses.  The trial court sentenced McCloud to an aggregate sentence of thirteen-and-one-half to twenty-seven years in prison.

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[2] Shortly after the shooting, Wesley, who was the target, was arrested and indicted by federal authorities and, thereafter, refused to cooperate with the investigation in this matter.  ***See*** N.T., 7/8/24, at 17.

This Court affirmed the judgment of sentence. ***See Commonwealth v. McCloud***, 964 A.2d 945 (Pa. Super. 2008). McCloud did not seek leave to appeal to the Pennsylvania Supreme Court. Subsequently, McCloud filed three unsuccessful PCRA petitions.

In April 2022, McCloud, through counsel, filed the instant petition claiming after-discovered evidence in the form of handwritten markings and notes from the District Attorney's case file, which he claimed demonstrated the assistant district attorney presented perjured eyewitness testimony[3] and failed to turn over exculpatory information.[4] ***See id***. at 2; PCRA Petition, 4/26/22, at 9-14 (unnumbered). The notes read as follows:

---

[3] ***See Napue v. Illinois***, 360 U.S. 264 (1959).

[4] ***See Brady v. Maryland***, 373 U.S. 83 (1963).



PCRA Petition, 4/26/22, Exhibit P-2.

The PCRA court held an evidentiary hearing at which the only witness was former Philadelphia Assistant District Attorney Eileen Hurley ("Attorney Hurley), who was responsible for the notes that constitute Exhibit P-2. *See id*. at 3. The PCRA court summarized Attorney Hurley's testimony as follows:

> [Attorney] Hurley stated that [] Norton was not initially cooperative because she feared for her safety. As a result, [Attorney] Hurley requested a preservation hearing. [] Norton positively identified [McCloud] during the preservation proceeding. During the preservation hearing, defense counsel, aware of [] Norton's initial reluctance to identify [McCloud], cross-examined [] Norton extensively.
>
> At the PCRA evidentiary hearing, [Attorney] Hurley also explained that the markings and notations she made in the Commonwealth's file reflected her ***personal opinion*** that [] Norton lied [initially]

- 4 -

about NOT witnessing the shooting. The markings were not an acknowledgment that [] Norton's identification testimony was fabricated.

*Id*. at 3 (some emphasis added, some in original). Following the hearing, the PCRA court denied the petition, finding it lacked merit because the court credited Attorney Hurley's testimony that she had not withheld evidence concerning Norton. **See id**. at 4-6. This timely appeal followed.[5]

On appeal, McCloud raises a single issue:

Did the PCRA court err in finding that [McCloud] was not entitled to relief on his new evidence claim that he was denied due process and a fair trial when the prosecutor presented false evidence through the testimony of [Norton] for the sole purpose of having her falsely identify [McCloud] as being one of the shooters?

McCloud's Brief at 6.

Our standard of review of an order dismissing a PCRA petition is well settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. **We are bound by any credibility determinations made by the PCRA court where they are supported by the record.** However, we review the PCRA court's legal conclusions *de novo*.

_____

[5] McCloud and the PCRA court complied with Pa.R.A.P. 1925. Moreover, McCloud complied with the dictates of our Pennsylvania Supreme Court in **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) (holding prospectively from the date of the **Walker** decision, "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case."). In February 2024, this Court consolidated the appeals *sua sponte*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citations and quotation marks omitted, emphasis added). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018).

We must initially determine whether the PCRA court had jurisdiction to adjudicate McCloud's petition. Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). Pennsylvania courts may nevertheless consider an untimely PCRA petition if the petitioner can plead and prove one of three exceptions set forth in section 9545(b)(1)(i)-(iii).

McCloud's judgment of sentence became final on December 15, 2008, when thirty days passed from the date this Court affirmed the judgment of sentence and McCloud did not seek leave to appeal to the Pennsylvania Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3) (providing that "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

Accordingly, McCloud's serial PCRA petition, filed in April 2022, is facially untimely.

Here, the parties and the PCRA court agreed McCloud met the newly discovered fact exception to the PCRA's timeliness requirements. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii).[6] This Court has reviewed the record and agrees; therefore, because McCloud satisfied the newly discovered fact exception, we address the merits of McCloud's claim of after-discovered evidence.

The law regarding requests for a new trial based on after-discovered evidence is settled. To establish this claim, an appellant must show that the evidence:

> (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

**Commonwealth v. Castro**, 93 A.3d 818, 821 n.7 (Pa. 2014) (citation omitted). In determining whether alleged after-discovered evidence "is of such nature and character that it would likely compel a different verdict if a new trial is granted," a court must "consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **Commonwealth v.**

---

[6] This exception applies when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii).

*Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010) (citation omitted).  Also, "the

proposed new evidence must be producible and admissible." *Castro*, 93 A.3d

at 825 (citation omitted).  It is the petitioner's burden to prove by a

preponderance of the evidence that he met each of the factors necessary for

a new trial.  *Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super.

2007).

> The law governing alleged *Brady* violations is settled:
>
> Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose *all exculpatory information* material to the guilt or punishment of an accused, including evidence of an impeachment nature.  To establish a *Brady* violation, an appellant must prove three elements:  (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.  The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution.  The evidence at issue must have been material evidence that deprived the defendant of a fair trial.  Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Ovalles*, 144 A.3d 957, 965 (Pa. Super. 2016) (citations

and quotation marks omitted) (emphasis added).

> To establish a *Napue* violation, a defendant must show that the prosecution knowingly solicited false testimony or knowingly allowed it to go uncorrected when it appeared.  If the defendant makes this showing, a new trial is warranted if there is any reasonable likelihood the false testimony could have affected the judgment of the jury.

*Commonwealth v. Johnson*, 335 A.3d 685, 717 (Pa. 2025) (citations and internal quotation marks omitted).

McCloud argues Attorney Hurley "intentionally put the perjurious testimony of [] Norton on the stand for the sole purpose of having her falsely identify [him] as being one of the shooters." McCloud's Brief at 19. McCloud reaches this conclusion by positing that Attorney Hurley did not write P-2 in February 2005 but rather wrote it *after* the May 12 preliminary hearing, when Attorney Hurley became aware that Norton testified that police harassed her.[7] *See id*. at 19-48. McCloud claims then Philadelphia Police Detective Ronald Dove ("Dove"), who was both one of the police officers whom the men shot at when he arrived on the scene and who was involved in the subsequent investigation, encouraged Norton to change her testimony, including changing her identification of an individual named "Montgomery" to McCloud; Dove was later dismissed from the police force and criminally convicted in an unrelated matter.[8] *See id*. McCloud then speculates that, contrary to Attorney Hurley's sworn and credited testimony,[9] because she wrote the note regarding Norton's inability or unwillingness to identify anyone *after* the May 12 preliminary

---

[7] As this statement was known to McCloud prior to trial it cannot constitute after-discovered evidence.

[8] The activities of Dove and their bearing on McCloud's case was the subject of his third PCRA petition and are thus previously litigated. *See* 42 Pa.C.S.A. § 9543(a)(3).

[9] Neither Norton nor Dove testified at the PCRA hearing.

hearing, she was aware of Dove's plan to persuade Norton to change her testimony, and therefore knowingly presented perjured testimony at the preservation hearing and at trial. *See id*.

The PCRA court, however, did not find McCloud's arguments persuasive. **See** PCRA Court Opinion, 1/7/25, at 5. It found:

> [Attorney] Hurley testified credibly. The markings and notations she made in the Commonwealth's file reflected her opinion that [] Norton lied about NOT witnessing the shooting. These notations were neither an acknowledgment nor admission that [] Norton's identification testimony was fabricated. Ultimately, [] Norton positively identified [McCloud] at both a preservation hearing and trial. [] Norton's testimony, along with other evidence, established [McCloud's] guilt beyond the reasonable doubt.

*Id*. at 5-6 (emphasis in original).

The PCRA court further credited Attorney Hurley's testimony she wrote the notes in early February 2005, prior to the May 2005 preliminary hearing, and reflected Attorney Hurley's notes of a telephone conversation she had with one of the detectives in the case regarding Norton's lack of cooperation with law enforcement and further that Attorney Hurley's writing the name "Montgomery" as an individual identified by Norton was a mistake because there was no one named "Montgomery" involved in the matter. **See** N.T., 7/8/24, at 21, 23, 27, 29-32, 38-39. Further, the PCRA court believed Attorney Hurley's testimony that Norton initially lied to the police about her ability to identify the shooters because she was being threatened and was in fear of her and her family's lives but cooperated once she was placed in protective custody. **See id**. at 32-35. We have no basis to disturb the trial

court's credibility findings, which are amply supported by the record. **See**

***Staton***, 184 A.3d at 954. Moreover, McCloud has not met his burden to

persuade us that the PCRA court erred by rejecting his claim Attorney Hurley's

act of jotting notes on the outside of a file are an admission of suborning

perjury. ***See Wholaver***, 177 A.3d at 144–45. McCloud's after-discovered

evidence claim does not merit relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/11/2025